**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID KELLY, RICHARD NORKO, | : | Civil Case Number |
| ANNETTE DOBBS, PETER DELLOLIO, | : | |
| *Plaintiffs*, | : | 3:16-cv-00543 (VLB) |
| | : | |
| v. | : | February 28, 2017 |
| | : | |
| HONEYWELL INTERNATIONAL, INC. | : | |
| *Defendant*. | : | |

<u>**RULING AND ORDER**</u>

Before the Court today is the question of whether former union employees who retired *after* the termination of the collective bargaining agreement and its incorporated documents ("Agreements") are entitled to lifetime medical coverage benefits.  This case was originally brought by Plaintiffs who retired both *before and after* the Agreements expired; they were notified in December of 2015 that their former employer, Honeywell International, Inc. ("Defendant"), decided to terminate their medical coverage benefits, which the Defendant had been providing to them since retirement.  On February 8, 2017, this Court issued a Memorandum of Decision on the parties' cross-motions for summary judgment. [Dkt. 58 (Summ. J. Order)].  The Court held that the Agreements unambiguously conferred full lifetime medical coverage benefits upon retirees who retired *prior* to the expiration of the Agreements on June 6, 1997, and granted summary judgment in favor of the Plaintiffs with respect to that subclass.  [*See id.* at 24, 33-34].  However, the Court also held that the contract language was ambiguous with respect to union employees who retired *after* the expiration of the Agreements

1

and ordered a hearing on this limited issue.  The hearing occurred on February 27, 2017.  Former employee and putative class member Brad Marshall and named Plaintiff David Kelly testified and counsel submitted documentary evidence on behalf of the Plaintiffs.  Defendant presented no evidence with the exception of the full Agreements.[1]  The Court has reviewed the evidence at length and finds that the union employees who retired after June 6, 1997, are not entitled to lifetime medical coverage benefits.

The Court assumes the parties' familiarity with the facts and will recite them only where needed to explain its reasoning for this ruling. The Effects Bargaining Agreement ("EBA") delineates the benefits to which the Union's members would be entitled upon and after AlliedSignal's acquisition of Textron. [Dkt. 45-2, ¶ 19; Dkt. 54, ¶ 19; Dkt. 45-9].  Section 2(b) provides, "All past and future retired employees and surviving spouses shall continue to receive their full monthly pension, including supplements if any, and full medical coverage as provided in the Pension Plan and Group Insurance Agreement, as now in effect or as hereafter modified by the parties for the life of the retiree or surviving spouse." [Evidentiary Hearing Def.'s Ex. 1, at 2].  The duration clause of the EBA states that the EBA "shall remain in effect until midnight on June 6, 1997, but not thereafter unless renewed or extended in writing by the parties."  [*Id.* at 18].   Defense counsel argued at the evidentiary hearing that the duration clause renders section 2(b) a nullity and as such the Defendant had no obligation to pay medical coverage to employees who retired after the expiration of the Agreements.  [*See*

---

[1] Previously, the parties only submitted excerpts of the Agreements.

Evidentiary Hearing (Ortelere), at 5:07 – 5:18].   Plaintiffs contend that the "past and future" language was added to the EBA at the express request of Mr. Kelly during union contract negations between the Union and Textron for the express purpose of "undercutting" the effect of the duration clause so as to ensure that employees who retired after expiration of the EBA and the related agreements, and their surviving spouses, would be entitled to lifetime medical coverage benefits.

For the purpose of interpreting section 2(b) of the EBA, Plaintiffs submitted into evidence the Local 1010 UAW Decision & Effects Agreement provided to Local 1010 members by the Union.[2]   Mr. Kelly testified that he created this document for the benefit of the union members, and it is a summary of the results from 1994 negotiation process between Textron and the Union for the union members to review prior to ratification.  [Evidentiary Hearing (Kelly), at 3:31-3:34]. Mr. Kelly testified that he circulated the document to Frank McNally, Vice President of Labor Relations at Textron, and George Metzger, Vice President of Human Resources at Textron, who approved of and printed the documents for distribution.  [*Id.*].  Mr. Kelly testified that they read the document in front of him. [*Id.* at 3:34-3:35].  At the evidentiary hearing, the parties discussed at length the provision of the summary that stated, "The Purchaser (Allied Signal) agrees to provide the full negotiated pension and medical coverage for all Local 1010 retirees and surviving spouses *who retire after the date of this agreement* for the

---

[2] **Plaintiffs also submitted this document as an exhibit to the Opposition on the Defendant's Motion to Dismiss.  [*See* Dkt. 24-11], to which Defendant did not object.**

life of the retiree and surviving spouse." [Evidentiary Hearing, Pls.' Ex. 3, at 1]. Mr. Kelly addressed the meaning of this language and testified that the Union communicated to Textron that the employees' lifetime medical benefits would vest immediately upon ratification of the contract. [Evidentiary Hearing (Kelly Testimony), at 3:46-3:48].    No other evidence presented the evidentiary hearing makes clear that retirees "who retire after the date of this agreement" includes individuals who retire after the agreement expires as opposed to those who retire before the agreement expires and while the agreement is in effect.

The introductory paragraph of the EBA summary makes clear that only those employees who retire before the EBA expires and their surviving spouses are entitled to lifetime medical coverage benefits.   The introductory section states, "The following benefits will be provided to all Local 1010 employees and retirees who are laid-off or *retire during this agreement.* [Evidentiary Hearing Pls.' Ex. 3, at 1]. "During" means "throughout the entire time of (an event, period, occurrence, etc.)" or "at some time in the course of (something)." *During*, Merriam-Webster    Dictionary,    available    at    https://www.merriam-webster.com/dictionary/during?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.  This document is the most apt extrinsic evidence of when retiree benefits vested, as Mr. Kelly testified that he drafted the summary to explain to the union membership the agreements reached between Textron and the Union in preparation for their ratification vote.  He further testified that it accurately reflected his understanding and the understanding of the Textron Vice Presidents for Labor Relations and Human Resources, each of whom read it in his presence,

voiced their agreement and arranged for its printing for distribution to union members in advance of their vote to ratify the contract which Mr. Kelly had negotiated on their behalf.

When construed in conjunction with section 2(b) of the EBA, the Court finds that the summary sheds light as to the intent of the parties at the time of contracting the EBA. *See M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 937 (wherein Justice Ginsburg stated in her concurring opinion that "[w]hen the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties") (quoting 11 R. Lord, Williston on Contracts § 30:7, p. 116-24 (4th ed. 2012)).  With the help of the summary, the language, "[a]ll past and future retired employees," can be interpreted to mean that past employees who retired prior to the EBA ratification may receive lifetime medical coverage benefits, and any future retiree who retires *during this agreement* is also entitled to lifetime medical coverage benefits.  Therefore, the Court concludes that the parties intended the lifetime medical coverage benefits to extend to employees who retired while the Agreements were in effect.  As the parties do not dispute the Agreements expired on June 6, 1997, individuals who retired subsequent to this date are not entitled to lifetime medical coverage benefits.

The Court recognizes Plaintiffs submitted several letters from AlliedSignal to union members who retired after the expiration of the Agreement, which indicated that AlliedSignal would pay such individuals retiree medical coverage benefits.  [*See* Evidentiary Hearing Exs. 1, 2, 4].  The Court also recognized that AlliedSignal did provide health benefits for approximately two decades; however,

AlliedSignal's interpretation is not controlling. "The fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties," and as such "[w]hen interpreting the meaning of a contract, it is the objective intent of the parties that controls." *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997). AlliedSignal was not a party to the Agreements and the interpretation of a third party not involved in negotiations is not controlling, particularly when compared to the summary interpreting the intention of the Union and Textron (who were the parties to the contract).[3] *See Third Party*, Black's Law Dictionary (10th ed. 2014) (defining "third party" as "[s]omeone who is not a party to a lawsuit, agreement, or other transaction but who is usu. somehow implicated in it; someone other than the principal parties. – Also termed *outside party; third person*").

The Court also notes that Plaintiffs have not pleaded allegations of detrimental reliance or that Defendants breached its fiduciary duty upon making material misrepresentations. Therefore, for the reasons set forth in the Court's Memorandum of Decision on the parties' cross-motions for summary judgment, [Dkt. 58], the Court grants summary judgment in favor of the Defendant as to Count III.

The Court hereby VACATES its previous Order granting Plaintiffs' Motion to Certify Class, [Dkt. 51], and creates two subclasses: (A) Plaintiffs who retired prior to the expiration of the Agreements, and (B) Plaintiffs who retired after the

---

[3] Evidence indicates that AlliedSignal had a stake in the outcome and was heavily involved behind the scenes, but AlliedSignal was not present at the negotiation table and the Agreements were explicitly made between Textron and the Union. [*See* Dkt. 44-10 (Kelly Dep.), at 75:16-76:11; Evidentiary Hearing Def.'s Exs. 1-3].

expiration of the Agreements.  Pursuant to the Court's previous order, [Dkt. 58], the Court GRANTS summary judgment as to Counts I and II in favor of Subclass A and permanently enjoins Defendant from eliminating these Plaintiffs' lifetime medical coverage benefits.  The Court GRANTS summary judgment as to Counts I and II in favor of Defendant with respect to Subclass B as these individuals' rights to lifetime medical coverage benefits did not vest prior to the expiration of the Agreements.  The Court finds as moot Count III as it pertains to Subclass A for the reasons set forth in the previous order, [*id.*], and GRANTS summary judgment in favor of Defendants as to Count III, breach of fiduciary duty, as it pertains to Subclass B.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  February 28, 2017

7