UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID KELLY, RICHARD NORKO, ANNETTE DOBBS, PETER DELLOLIO, *Plaintiffs*, | : : : : | Civil Case Number  3:16-cv-00543 (VLB) |
| v. | : : | May 25, 2017 |
| HONEYWELL INTERNATIONAL, INC. *Defendant*. | : : | |

# MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR RECONSIDERATION [DKT. 70]

Plaintiffs filed the instant motion for reconsideration upon the Court entering judgment in favor of Defendant with respect to "Subclass B," retirees who retired after the expiration of the collective bargaining agreement and its incorporated documents ("Agreements") as well as their surviving spouses. The Court previously granted summary judgment in favor of Subclass A, retirees who retired before the Agreements' expiration as well as their surviving spouses. The Court assumes the parties' familiarity with the facts. For the following reasons, the Plaintiffs' motion is GRANTED.

## I. Background

On August 12, 2016, the parties submitted to the Court for certification the following proposed class:

> all former Stratford plant production and maintenance and office and clerical employees (those represented by UAW Locals 376 and 1010) who retired from Honeywell or AlliedSignal since October 28, 1994 (the date the retiree obligations moved to Textron to AlliedSignal) and surviving spouses who are receiving retirement health insurance benefits from Honeywell or are otherwise eligible to receive coverage.

1

[Dkt. 37 (Joint Proposed Class), ¶ 1 (jointly modifying Plaintiffs' Mot. Certify Class)]. During a telephonic conference on November 7, 2016, the Court inquired as to whether the class should be divided into two subclasses: retirees who retired before the Agreements' expiration and their surviving spouses, and retirees who retired after the Agreements' expiration and their surviving spouses. [Dkt. 81 (Tel. Conf. Tr.), at 9:4-16]. Defense counsel averred that "it [did] not matter whether they retired during that period," *id.* at 10:8-23, and accordingly and upon consent of both parties the Court granted the proposed class, [Dkt. 51 (Vacated Order)].

After reviewing the parties' summary judgment briefing and evidence, the Court concluded that despite the parties' contention about the irrelevance of the date of retirement, lifetime medical coverage benefits vested only for retirees who retired prior to the expiration of the Agreements. [Dkt. 58 (Decision), at 33-34]. The Court determined the language in the Agreements to be ambiguous with respect to retirees who retired *after* the expiration of the Agreements, and thereafter held a hearing on February 27, 2017, to address the limited issue of whether these particular Plaintiffs also enjoyed vested lifetime medical coverage benefits. The Court reviewed evidence and considered the hearing testimony, making the determination that such rights were not vested and vacating the certification of the initial class. [Dkt. 64 (Ruling and Order), at 6-7]. Presently there exist two subclasses: (A) retirees who retired before the expiration of the Agreements and

their surviving spouses; and (B) retirees who retired after the expiration of the Agreements and their surviving spouses.[1]

Relevant to this issue is the Local 1010 UAW Decision & Effects Agreement ("Summary"), a document summarizing the results from the 1994 negotiation process between Textron and the Union for the union members to review prior to ratification. [*See* Dkt. 24-11 (Summ. for Ratification)]. Former Union President and current President of the Local 1010 Retiree Chapter, David Kelly, testified during the hearing that he created the Summary for the union members, circulated it to Textron's Vice President of Labor Relations and Vice President of Human Resources, and watched these individuals read the Summary in front of him. [*See* Dkt. 72 (Evid. Hr'g Tr.), at 68:22-70:11]. Importantly, he also "asked [the Vice Presidents] to verify its accuracy, that it was okay with – that it *accurately reflected what was negotiated.*" *Id.* at 69:22-70:3 (emphasis added). The Summary's introductory paragraph states, "The following benefits will be provided to all Local 1010 employees and retirees who are laid-off or retire *during this agreement.*" [Dkt. 24-11, at 1]. The Court relied upon this clear language and Mr. Kelly's testimony in concluding there was no triable issue of fact regarding the parties' intentions at the time the contract took effect and accordingly concluded that section 2(b) of the Effects Bargaining Agreement ("EBA") did not confer vested lifetime medical

---

[1] As the Court recognized in the Memorandum of Decision on the Cross-Motions for Summary Judgment, the central issue as to whether and on what date employees' medical coverage benefits vested applies both to retirees and their surviving spouses. [*See* Dkt. 58, at 17, 25]. Previous and subsequent references to retirees' contractual rights include surviving spouses.

3

coverage benefits to Subclass B because they retired or were laid off *after* and not *during* the Agreements. [Dkt. 64 (Ruling and Order)].

Both parties have since appealed. Defendant challenges the entirety of the final judgment, [Dkt. 68 (Def.'s Notice Appeal)], and Plaintiffs challenge the final judgment only with respect to Subclass B, [Dkt. 75 (Pls.' Notice Appeal)]. Plaintiffs also filed the instant Motion for Reconsideration. [Dkt. 70-1 (Mot. Recons.)]. The Second Circuit has stayed the appeal pending resolution of this motion pursuant to Fed. R. App. P. 4(a)(4). *See Kelly v. Honeywell Int'l Inc.*, appeals docketed, 16-675 (2d Cir. Mar. 7, 2017), 17-803 (2d Cir. Mar. 21, 2017).

Plaintiffs principally argue in the Motion for Reconsideration that Kelly carelessly drafted the Summary "in haste," he intended to write "under" instead of "during," and that such a mistake was not authorized by anyone on the UAW side of the bargaining table. [Dkt. 70-1, at 2]. As supporting evidence, Plaintiffs filed Kelly's declaration in which he states after the Agreements expired, "in the summer and fall of 1997, HR Director Brian McMenamin told the Local 1010 bargaining committee, me included, that employees would not lose their lifetime retiree medical benefits if they worked beyond the expiration date. He also asked me on at least two occasions to help persuade senior employees to defer retirement beyond contract expiration." [Dkt. 70-2 (Pls.' Ex. 1, Kelly Decl.), ¶ 7]. Plaintiffs also filed a document titled "Hot News Local 1010: Voluntary Layoffs," dated May 30, 1995. [*See* Dkt. 70-3 (Pls.' Ex. 2, Hot News)]. The article explains that since November 1994, a total of 136 Local 1010 employees elected to take voluntary layoffs and 117 took immediate early retirement following layoffs. *Id.* Laid off

4

employees who retired received a severance bonus of $27,700 "in addition to the employee's pension and medical benefits which are guaranteed for life by the AlliedSignal Corporation *under* the terms of our Agreement." *Id.* (emphasis added). Plaintiffs aver that this article is an example demonstrating Kelly "never made this misstatement again." [Dkt. 70-1, at 2].

II. Legal Standard

The District Court of Connecticut Local Rule 7(c) permits a Motion for Reconsideration to be filed within seven days of the filing of a decision. A motion for reconsideration filed under Local Rule 7(c) is equivalent as a practical matter to a motion for amendment of judgment under Fed. R. Civ. P. 59(e). *See City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991). Rule 59(e) motions filed within 28 days of the judgment suspend the finality of judgment. *See Weyant v. Okst*, 198 F.3d 311, 314-15 (2d Cir. 1999) ("The timely filing of a postjudgment motion pursuant to Fed. R. Civ. P. . . 59 automatically 'affect[s] the finality of the judgment,' Fed. R. Civ. P. 59 Advisory Committee Note (1995), because such a motion seeks to alter the judgment or reverse decisions embodied in it."); Moore's Federal Practice ¶ 59.52[1] (3d ed. 2016).

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn.

L. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked"). There are three grounds for granting a motion for reconsideration: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Fed. Practice & Procedure*, § 4478 at 790). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (per curium). However, a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *Patterson v. Bannish*, No. 3:10-cv-1481 (AWT), 2011 WL 2518749, at *1 (D. Conn. June 23, 2011) (same).

III. <u>Analysis</u>

In moving for reconsideration as to Subclass B, Plaintiffs contend "there was arguably controlling data related to the [EBA] summary (Dkt. 24-11) on which the Court relied that it overlooked." [Dkt. 70-1, at 1]. Plaintiffs address this issue as a general matter and do not articulate precisely how they are entitled to reconsideration under any of the factors. The Court has nonetheless assessed each factor because the Court granted summary judgment on a basis not proposed by either party, which neither party had an opportunity to address. The Court holds that reconsideration should be GRANTED.

6

Viewing the record in its entirety, the Court finds that there exists a triable issue of material fact for a jury to consider. Textron and the Union negotiated new Agreements effective May 30, 1994. [*See* Dkt. 45-2, ¶ 9; Dkt. 54, ¶ 9; Dkt. 45-5 (Def.'s Mot. Summ. J. Ex. 3, Local 376/Textron CBA), at 4]. Kelly testified that he was present at the bargaining table during the negotiation process as the "unofficial benefit representative." [*See* Dkt. 72, at 71:10-16]. His testimony that the "specific language that said this benefit is for all past, meaning Textron, and all future, meaning AlliedSignal, retirees," *id.* at 75:6-9, is different than the Court's conclusion upon analyzing the Summary. The record is replete with examples supporting his articulation that the Agreements afforded lifetime benefits to all retirees, which include the Defendant's repeated statements and conduct after the Agreements expired. [*See, e.g.,* Dkt. 24-12 (Opp'n Mot. Dismiss Ex. 12, Pension Board Letters); Dkt. 24-14 (Opp'n Mot. Dismiss Ex. 14, AlliedSignal Plant Closure Letter); Dkt. 24-21 (Opp'n Mot. Dismiss Ex. 21, Honeywell Letter)].

The Summary was drafted by Kelly and its accuracy was confirmed by Textron on the spur of the moment and does not have the indicia of reliability of a summary plan description ("SPD"), which Employee Retirement Income Security Act ("ERISA") requires an employer to provide to its employees. [*See* Dkt. 24-11, at 1; 29 U.S.C.A. § 1022.] Section 1022(a) of ERISA specifically requires an SPD to "be written in a manner calculated to be understood by the average plan participant." 29 U.S.C.A. § 1022(a). In addition, an SPD must "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* Subsection (b)

7

lists the content required in an SPD, which includes "a description of the relevant provisions of any applicable collective bargaining agreement" and "the plan's requirements respecting eligibility for participation and benefits." 29 U.S.C.A. § 1022(b). This Summary does not comply with the requirements under § 1022(b). Furthermore, the employer did not write the Summary as is required. Therefore, the Summary cannot be considered an SPD and is not dispositive of the contracting parties' intent.

The conduct of both the Plaintiffs and the Defendant is inconsistent with the language in the Summary, which is sufficient to raise a question about the parties' mutual understanding at the time the Summary was written. A triable issue of fact therefore exists as to whether the Company intended to provide benefits to Plaintiffs who retired after expiration of the Agreements and their surviving spouses. Should the Court deny the motion for reconsideration, there would be a risk of manifest injustice.

IV. <u>Conclusion</u>

For the aforementioned reasons, Plaintiffs' Motion for Reconsideration is hereby GRANTED. Should the case be remanded for further proceedings subsequent to the appeal, the parties are directed to meet and confer and propose a schedule to the Court within 21 days of the date of the Second Circuit mandate. The Court also orders the parties to file a <u>status report within 21 days of the date of this Order</u> stating whether there is presently a need for the Court to address the preliminary injunction previously found moot.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut: May 25, 2017