UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID KELLY, RICHARD NORKO, ANNETTE DOBBS, PETER DELLOLIO, *Plaintiffs*, | : : : : : | Civil Case Number 3:16-cv-00543 (VLB) |
| v. | : : | June 27, 2017 |
| HONEYWELL INTERNATIONAL, INC. *Defendant*. | : : | |

## MEMORANDUM OF DECISION GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT. 43]

Plaintiffs are former union members represented by UAW Locals 376 and 1010 who worked at the Stratford plant and retired from Honeywell or AlliedSignal after October 28, 1994, and their surviving spouses. In December 2015 Honeywell announced that at the end of 2016 it would terminate the medical coverage benefits Plaintiffs had been receiving since retirement. [Dkt. 44-2 (Pls.' Local Rule 56(a)(1) Stmt.), ¶ 67; Dkt. 55-1 (Defs.' Local 56(a)(2) Stmt.), ¶ 67].

Plaintiffs filed a Motion for Preliminary Injunction on October 31, 2016 in light of the upcoming coverage termination deadline. [*See* Dkt. 43]. The Court subsequently held a telephonic conference to discuss this issue and others, and upon the parties' agreement the Court held in abeyance the preliminary injunction pending the ruling on summary judgment. [*See* Dkt. 52]. On February 28, 2017, the Court granted summary judgment in favor of Defendant as to Subclass B: retirees who retired *after* the expiration of the Agreements and their surviving spouses. [*See* Dkt. 64]. This conclusion led the Court to find as moot the Motion for

Preliminary Injunction. [*See* Dkt. 65]. Defendant terminated the medical coverage for Subclass B the following day. [*See* Dkt. 83 (Joint Report) at 1].

Plaintiffs subsequently filed a Motion for Reconsideration of the summary judgment ruling as to Subclass B, [*see* Dkt. 70], as well as an appeal of the summary judgment ruling, the preliminary injunction ruling, and the judgment, [*see* Dkt. 75]. The Court granted the Plaintiffs' Motion for Reconsideration and ordered the parties to report whether there is reason to revisit the preliminary injunction. On June 15, 2017, the parties filed a Joint Notice indicating that Defendant terminated the medical benefits of Subclass B retirees and their surviving spouses on March 1, 2017, the day after the Court granted summary judgment in favor of the Defendant as to Subclass B. [*See* Dkt. 83]. Two Subclass B members submitted declarations along with the Joint Notice, and they indicated that they did not receive notice of the termination of their benefits until approximately three weeks later. *See* [Dkt. 83-1 (Ex. 1, Keegan Decl.) ¶ 6 (receiving notice March 22, 2017); Dkt. 83-1 (Ex. 2, Far Decl.) ¶ 6 (receiving notice March 24, 2017)]. Linda Keegan specifically reported that she underwent three chemotherapy treatments during the month of March when she did not know her medical benefits had been terminated. [Dkt. 83-1 ¶ 9]. Mary Ann Far stated that she obtained prescription drugs in March during the time she unknowingly did not have medical coverage benefits, and her provider informed her the cost of these prescriptions was approximately $16,180 (although she has not yet been billed). [Dkt. 83-2 ¶ 10].

Upon the Court's Order, Defendant filed a Response to the Motion for Preliminary Injunction, [*see* Dkt. 86], to which Plaintiffs replied, [*see* Dkt. 87]. For the following reasons, Plaintiffs' Motion for Preliminary Injunction is GRANTED.

I. <u>Legal Standard</u>

To obtain preliminary injunctive relief, the moving party must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotation marks and citation omitted). The value of this standard "lies in its flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation." *Id.* Plaintiffs request that the Court order Defendant to reinstate medical coverage benefits that, until recently, they have been receiving for approximately 20 years and to which they believe they are entitled. This constitutes the "normal function" of a preliminary injunction: "to maintain the status quo pending a full hearing on the merits." *Treibwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976).

II. <u>Analysis</u>

A. *<u>Irreparable Harm</u>*

Both the threat of termination as well as the actual termination of medical coverage benefits constitute irreparable harm. *See Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979) ("In fact, the threatened termination of benefits such as

medical coverage for workers and their families obviously raised the spectre of irreparable injury."); *Commc'ns Workers of Am., Dist. One, AFL-CIO v. NYNEX Corp.*, 898 F.2d 887, 891 (2d Cir. 1990) ("In this circuit, the threat of termination of medical benefits to striking workers has been held to constitute irreparable harm."); *Fishman v. Paolucci*, 628 F. App'x 797, 801 (2d Cir. 2015) ("A lack of medical services is exactly the sort of irreparable harm that preliminary injunctions are designed to address."); *LaForest v. Honeywell*, No. 03-CV-6248T, 2003 WL 23180220, at *1 (W.D.N.Y. Sept. 19, 2003) ("If the mere threat of termination of medical benefits constitutes irreparable harm, then the actual termination of medical benefits certainly constitutes irreparable harm.") (internal citations omitted). Factors demonstrating retirees will experience irreparable harm include:

> (1) most retired union members are not rich, (2) most live on fixed incomes, (3) many will get sick and need medical care, (4) medical care is expensive, (5) medical insurance is, therefore, a necessity, and (6) some retired workers may find it difficult to obtain medical insurance on their own while others can pay for it only out of money that they need for other necessities of life.

*United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987); *see LaForest*, 2003 WL 23180220, at *1 (citing *United Steelworkers of Am.* in a case where the plaintiffs argued irreparable harm because the loss of medical coverage caused "(1) substantial risk to plaintiffs' health; (2) severe financial hardship; (3) the inability to purchase life's necessities; and (4) anxiety associated with uncertainty")*.*

Plaintiffs submitted two declarations demonstrating they have experienced and will experience irreparable harm due to Defendant's decision to terminate their medical coverage benefits. Ms. Keegan receives chemotherapy treatment for AL

amyloidosis, a rare malignant blood disorder. [Dkt. 83-1 ¶ 4]. Although she has found replacement medical coverage, she and her husband must pay an additional $550 a month. *Id.* ¶ 7. They receive pension and Social Security benefits. *Id.* ¶ 6. Ms. Keegan did not receive chemotherapy in the last week of March as a result of the expenses incurred. *Id.* ¶ 9. Ms. Far similarly experiences rising costs for the prescription medication that she must take for her heart condition, high blood pressure, and pre-diabetic issues and that her husband must take for multiple sclerosis. *See* [Dkt. 83-2 ¶ 4, 7-8]. Their family now has an additional expense of $12,000 per year with possibly an additional cost of $16,180 for prescription medication, which they obtained during the period they were unknowingly uninsured; such expenses cause financial stress given they live on disability income and one full-time income. *Id.* ¶¶ 11-12. As such, the declarations clearly show Defendant's decision to terminate their medical coverage benefits can lead to irreparable harm, as the individuals report to rely at least in part on fixed incomes, they need medical care that is expensive, medical insurance is expensive, and they are struggling to make ends meet given other expenses in life. The Court finds irreparable harm has been established.

### B. *Sufficiently Serious Questions for the Merits*

The purpose of a preliminary injunction is "to give temporary relief based on a preliminary estimate of the strength of a plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case." *Citigroup*, 598 F.3d at 35. A preliminary injunction therefore is not to be limited just to cases that will more likely than not be successful at trial; otherwise, the "sufficiently serious

questions" element would provide no purpose. *See id.* "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.*

As the Court has acknowledged in its reconsideration decision, there exists a triable issue of fact as to the ambiguous language of the collective bargaining agreement and its associated agreements ("Agreements") regarding the vesting of lifetime medical coverage benefits to Subclass B, which only the jury can evaluate and decide. The Court determined in its initial decision denying summary judgment that the language of the Agreements was ambiguous as to Subclass B. *See* [Dkt. 58 at 26]. Former Union President and current President of the Local 1010 Retiree Chapter, David Kelly, drafted a Summary about the effects bargaining agreement ("EBA") for union members to review prior to ratification, which states that "benefits will be provided to all Local 1010 employees and retirees who are laid-off or retire <u>during</u> this agreement." [Dkt. 24-11 (Opp'n Mot. Dismiss Ex. 11, EBA Summary) at 1]. However, he avers that this Summary was drafted in haste and is inaccurate, and the record contains numerous examples supporting this proposition. [*See, e.g.,* Dkt. 24-12 (Opp'n Mot. Dismiss Ex. 12, Pension Board Letters); Dkt. 24-14 (Opp'n Mot. Dismiss Ex. 14, AlliedSignal Plant Closure Letter); Dkt. 24-21 (Opp'n Mot. Dismiss Ex. 21, Honeywell Letter)]. Indeed, Defendant has been providing medical coverage benefits for approximately 20 years until March 1, 2017, when it purportedly terminated their coverage without first providing

written notice.  Accordingly, there exists a sufficiently serious question going to the merits as to whether the language in the Agreements conferred vested lifetime medical coverage benefits for retirees who retired after the expiration of the Agreements and their surviving spouses.

The costs also clearly outweigh the benefits of not granting a preliminary injunction.  Subclass B retirees and their surviving spouses already have elevated medical care and prescription drug costs due to Defendant's termination of medical coverage benefits, a reality that may curtail the ability for some to receive appropriate treatment.  *See, e.g.,* [Dkt. 83-1 ¶ 9].  These retirees and their surviving spouses generally live on a fixed income and are less capable of supplementing their income.  It is widely understood that the availability of health care coverage is now uncertain.  *See, e.g.,* Congressional Budget Office ("CBO"), *H.R. 1628, American Health Care Act of 2017* (May 24, 2017), available at https://www.cbo.gov/publication/52752 (estimating that "14 million more people will be uninsured in 2018 under the American Health Care Act passed by the House of Representatives than under the current law."); CBO, *HR 1628, Better Care Reconciliation Act of 2017* (June 26, 2017), available at https://www.cbo.gov/publication/52849 (estimating that "15 million more people would be uninsured under this legislation than under current law").  In addition, the costs of health care for some are increasing and older individuals in particular may experience rising premiums or find it difficult to obtain health insurance should Congress approve current proposals.  *Id.*  Requiring Subclass B individuals—many of whom have presented life threatening health issues to the Court—to personally

pay for medical benefits they are potentially entitled to receive from Defendant, comes at a great cost. The balance tips decidedly in favor of the Plaintiffs because Defendant neither claims nor can the Court conceive of any reason why continuing to provide benefits the Defendant has been providing for nearly 20 years constitutes a hardship. Should Defendant ultimately prevail as to Subclass B, it can later recover any losses incurred.

Plaintiffs have stated the Court need not hold a hearing, a request to which the Defendant does not object. Indeed, the Court is not required to hold a hearing on the motion for preliminary injunction. *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) ("[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it."). Based on the parties' briefing and the Plaintiffs' submitted declarations, the Court finds there is sufficient evidence to rule on the preliminary injunction and GRANTS this motion.

Defendant has indicated that it contemplates appealing the Court's preliminary injunction ruling and may file a motion to stay the case pending the outcome of the pending appeals. [Dkt. 83 at 2]. The Court is disinclined to grant a motion to stay as there is a general preference for the court of appeals to address a final judgment rather than engage in "piecemeal appellate review of trial court decisions which do not terminate the litigation." *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 178 (2d Cir. 2008). The Court acknowledges that Defendant can elect to file an interlocutory appeal of the preliminary injunction decision. *See*

28 U.S.C. § 1292(a)(1). In the interest of judicial economy and efficiency the Court is more than willing to schedule an early trial date before the end of the year so that the case can be tried on its merits and Defendant can appeal a final judgment.

III. Conclusion

The Court hereby GRANTS Plaintiffs' Motion for a preliminary injunction and ORDERS Defendant to reinstate their previously existing medical coverage benefits. The parties are ORDERED to conduct a Rule 26(f) planning meeting and file a report by July 31, 2017.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 27, 2017