17-675(L)
*Kelly v. Honeywell Int'l, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2018

_____

(Argued: December 5, 2018                                    Decided: August 7, 2019)

Docket Nos. 17-675(L), 17-2075(CON)

_____

DAVID KELLY, RICHARD NORKO, ANNETTE DOBBS, and PETER
DELLOLIO, for themselves and others similarly situated,

*Plaintiffs-Appellees,*

v.

HONEYWELL INTERNATIONAL, INC.,

*Defendant-Appellant.*[1]

_____

Before: CABRANES, POOLER, and DRONEY, *Circuit Judges*.

Defendant-Appellant Honeywell International, Inc. ("Honeywell") appeals

from the February 28, 2017, judgment and order of the District Court for the

_____

[1] The Clerk of Court is directed to amend the caption as above.

CERTIFIED COPY ISSUED ON 08/07/2019

1   District of Connecticut (Vanessa L. Bryant, *J.*) granting summary judgment to

2   union retirees who retired before June 6, 1997, and their surviving spouses and

3   permanently enjoining Honeywell from terminating their medical benefits.

4   Honeywell also appeals from the June 27, 2017, order of the same court

5   preliminarily enjoining Honeywell from terminating medical benefits to union

6   retirees who retired after June 6, 1997, and their surviving spouses.

7       The parties contest two issues in these consolidated appeals: (1) whether

8   an effects bargaining agreement ("EBA") requires Honeywell to provide lifetime

9   medical coverage to union retirees and their surviving spouses and (2) if so,

10  whether union retirees who retired after that EBA expired (i.e., after June 6, 1997)

11  and their surviving spouses are also entitled to lifetime medical coverage. As to

12  the first issue, we AFFIRM the judgment and order of the district court and hold

13  that, where a collective bargaining agreement contains unambiguous language

14  vesting welfare benefits, the agreement's general durational clause does not

15  prevent those benefits from vesting. As to the second issue, we AFFIRM the

16  order of the district court preliminarily enjoining Honeywell from terminating

17  medical coverage for retirees who retired after the EBA expired and their

18  surviving spouses because there is a sufficiently serious question as to whether

2

an ambiguous term in the agreement entitles such retirees and their surviving

spouses to lifetime medical coverage.

Affirmed and remanded for further proceedings.

_____

BRIAN T. ORTELERE, Morgan Lewis & Bockius LLP
(Donald L. Havermann, Sean M. McMahan, Abbey M.
Glenn, *on the brief*), Philadelphia, PA, *for Defendant-
Appellant.*

WILLIAM WERTHEIMER, Bingham Farms, MI, *for
Plaintiffs-Appellees.*

Thomas Meiklejohn, Livingston, Adler, Pulda,
Meiklejohn & Kelly, PC (*on the brief*), Hartford, CT, *for
Plaintiffs-Appellees*.

POOLER, *Circuit Judge*:

Defendant-Appellant Honeywell International, Inc. ("Honeywell") appeals

from the February 28, 2017, judgment and order of the District Court for the

District of Connecticut (Vanessa L. Bryant, *J.*) granting summary judgment to

union retirees who retired before June 6, 1997, and their surviving spouses and

permanently enjoining Honeywell from terminating their medical benefits.

Honeywell also appeals from the June 27, 2017, order of the same court

1  preliminarily enjoining Honeywell from terminating medical benefits to union

2  retirees who retired after June 6, 1997, and their surviving spouses.

3      The parties contest two issues in these consolidated appeals: (1) whether

4  an effects bargaining agreement ("EBA") requires Honeywell to provide lifetime

5  medical coverage to union retirees and their surviving spouses and (2) if so,

6  whether union retirees who retired after that EBA expired (i.e., after June 6, 1997)

7  and their surviving spouses are also entitled to lifetime medical coverage. As to

8  the first issue, we AFFIRM the judgment and order of the district court and hold

9  that, where a collective bargaining agreement contains unambiguous language

10  vesting welfare benefits, the agreement's general durational clause does not

11  prevent those benefits from vesting. As to the second issue, we AFFIRM the

12  order of the district court preliminarily enjoining Honeywell from terminating

13  medical coverage for union retirees who retired after the EBA expired and their

14  surviving spouses because there is a sufficiently serious question as to whether

15  an ambiguous term in the agreement entitles such retirees and their surviving

16  spouses to lifetime medical coverage.

4

# BACKGROUND

This case concerns the medical benefits of workers who retired after October 28, 1994, from an army plant in Stratford, Connecticut, and the medical benefits of their surviving spouses.[2] The retirees in these consolidated appeals were members of the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or "Union"), Local 1010 and Local 376. These local chapters entered into several agreements regarding employee and retiree benefits with Textron Corporation ("Textron"), the owner and operator of the Stratford plant between 1984 and 1994.

In the waning months of 1993, Textron began negotiating a sale of the Stratford plant to AlliedSignal, Inc. ("AlliedSignal"). AlliedSignal conditioned its purchase of the Stratford plant on Textron reaching a satisfactory collective bargaining agreement with the local UAW to replace the parties' expiring agreements. Accordingly, Textron and the local UAW negotiated a new collective bargaining agreement while Textron was in talks to sell the plant to AlliedSignal.

_____

[2] For ease of reference, henceforth wherever we refer to "retirees," we also refer to their surviving spouses.

1    **I.  The Collective Bargaining Agreements**

2       Textron and the UAW ultimately negotiated—and AlliedSignal

3    approved—three agreements:[3] a Collective Bargaining Agreement ("CBA"), a

4    supplemental Group Insurance Agreement ("Supplemental Agreement"), and an

5    EBA, which specifically concerns "the financial and economic impact and effects

6    of a potential sale of assets" to AlliedSignal, App'x at 344, 374. The substance of

7    the three agreements and their durational clauses are of particular relevance to

8    this appeal.

9    **A. The EBA**

10      The parties negotiated an EBA in part due to the UAW's concern that

11   AlliedSignal would close the Stratford plant upon purchase and transfer

12   operations to a different plant. The EBA therefore covers such topics as pensions,

13   severance packages, transition bonuses, and other considerations for employees

14   who might be laid off as a consequence of AlliedSignal's acquisition of the plant.

---

[3] Textron actually entered three separate agreements with UAW Local 1010 and three separate agreements with UAW Local 376, for a total of six agreements. Textron's agreements with the two locals are identical in the aspects material to the questions presented, and the forthcoming analysis therefore applies equally to both sets of agreements.

Of particular importance here, the EBA outlines medical benefits for union

retirees as follows:

> All past and future retired employees and surviving spouses shall
> continue to receive . . . full medical coverage as provided in the . . .
> Group Insurance Agreement, as now in effect or as hereafter
> modified by the parties for the life of the retiree or surviving spouse.

App'x at 345, 375. The parties agreed that the EBA was "effective as of May 30,

1994, and [would] remain in effect until midnight on June 6, 1997, but not

thereafter unless renewed or extended in writing by the parties." App'x at 359,

391.

**B.  The CBA**

The parties explicitly incorporated the EBA as a supplemental agreement

to the CBA. The CBA concerns, inter alia, medical insurance benefits for union

members. The CBA, like the EBA, also contains a durational clause:

> Except as otherwise provided herein, this Agreement shall become
> effective as of May 30, 1994 and shall remain in effect up to and
> including June 6, 1997 and shall automatically renew itself from year
> to year thereafter unless written notice to terminate or amend the
> Agreement is given by either party to the other at least sixty (60)
> days prior to its expiration or any annual renewal thereof.

App'x at 309, 318 (alterations omitted).

### C. The Supplemental Agreement

The CBA incorporates the Supplemental Agreement in order to provide a description of "[t]he details and levels of the Group Insurance benefits" specified in the CBA. App'x at 306, 316. The Supplemental Agreement describes the medical benefits and plan options available to eligible employees and retirees and conditions the benefits provided for therein on the continued existence of the CBA. App'x at 329, 339 ("If the Collective Bargaining Agreement is canceled in whole or in part **benefits hereunder** will immediately cease."). The Agreement also contains a durational clause that is nearly identical to the CBA's durational clause.

### II. Asset Sale

In July 1994, AlliedSignal agreed to assume the 1994 collective bargaining agreements and Textron's obligations thereunder as of the date it acquired the Stratford plant (ultimately in October 1994). AlliedSignal subsequently terminated the agreements at the earliest permissible opportunity, June 6, 1997. Nonetheless, the company continued to provide union retirees with medical benefits without interruption.

On September 30, 1998, AlliedSignal closed production at the Stratford plant and moved operations to a nonunionized plant in Phoenix, Arizona, and a plant in South Carolina. Shortly thereafter, in 1999, AlliedSignal acquired Honeywell, and the company assumed the Honeywell name.

Now doing business as Honeywell, the company continued to provide medical coverage to union retirees until years later, when, in December 2015, Honeywell undertook a review of its collective bargaining agreements in light of the Supreme Court's decision in *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015). Following the review, Honeywell announced that it intended to terminate retiree medical coverage on December 31, 2016. Nevertheless, as of this writing, and pursuant to injunctive orders from the district court, Honeywell has continued to provide medical coverage to the retirees.[4]

## III.   Procedural History

The retirees brought suit over Honeywell's decision to terminate their medical coverage, claiming they were entitled to medical coverage for their

---

[4] Honeywell briefly stopped providing medical coverage for retirees who retired after the EBA expired. The district court subsequently ordered Honeywell to restore medical coverage to these retirees.

9

1    lifetimes. Taking a complex path to the disposition of these claims, the district

2    court ultimately (1) awarded summary judgment and a permanent injunction to

3    retirees who retired before the EBA expired ("Pre-Expiration Plaintiffs") and (2)

4    preliminarily enjoined Honeywell from terminating medical benefits for retirees

5    who retired after the EBA expired ("Post-Expiration Plaintiffs").

6                              **DISCUSSION**

7           Honeywell now appeals from the district court's grant of summary

8    judgment to the Pre-Expiration Plaintiffs, which required Honeywell to provide

9    medical coverage to the Pre-Expiration Plaintiffs for their lifetimes, and the

10   district court's order preliminarily enjoining Honeywell from terminating

11   medical coverage to the Post-Expiration Plaintiffs.

12   **I.      Standard of Review**

13          The appealed-from injunctive orders turn on the interpretation of a

14   contract, which presents "a legal question . . . reviewed de novo." *Capital Ventures*

15   *Int'l v. Republic of Argentina*, 552 F.3d 289, 293 (2d Cir. 2009). We review the

16   district court's "ultimate decision" to issue an injunction for abuse of discretion.

17   *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 214 (2d Cir.

18   2014).

## II. The Pre-Expiration Plaintiffs Are Entitled to Lifetime Medical Coverage

Honeywell primarily offers two reasons that the EBA's promise that "[a]ll past and future retired employees and surviving spouses shall continue to receive . . . full medical coverage . . . for the life of the retiree or surviving spouse," App'x at 345, 375, does not vest retiree medical coverage.[5] First, Honeywell argues that the general durational clauses in the EBA and CBA and a cancellation provision in the Supplemental Agreement prevent retiree medical benefits from vesting. Second, Honeywell contends that a cancellation provision in the Supplemental Agreement operated as the functional equivalent of a reservation of rights clause, enabling Honeywell to unilaterally terminate medical benefits when it terminated the CBA. The retirees counter that Honeywell's contractual promise to provide medical coverage "for the life of the retiree or surviving spouse," App'x at 345, 375, is affirmative lifetime language that can only be interpreted to vest medical coverage for retirees and is thus unaffected by the durational language in the EBA or Supplemental Agreement.

---

[5] Because we base our decision on principles of general contract interpretation, we do not reach Honeywell's arguments that the district court erred by finding retiree medical benefits vested because they were tied to pension benefits.

The retirees also point to extrinsic evidence and Honeywell's performance of the contract as support for their interpretation.

### A.     Legal Framework

It is "the general rule . . . that an employee welfare benefit plan is not vested and that an employer has the right to terminate or unilaterally to amend the plan at any time." *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 133 (2d Cir. 1999) (internal quotation marks omitted). The employer may, however, "contract[] to vest employee welfare benefits." *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996). "[I]f an employer promises vested benefits, that promise will be enforced." *Am. Fed. of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997). We therefore look to Honeywell's contracts with the Union—the EBA, CBA, and Supplemental Agreement—to determine if Honeywell intended to vest medical benefits. *Schonholz*, 87 F.3d at 78; *see also Joyce*, 171 F.3d at 134.

"We interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). While the Supreme Court

1    has embraced "the traditional principle that contractual obligations will cease, in

2    the ordinary course, upon termination of [a] bargaining agreement," it has

3    emphasized that "[t]hat principle does not preclude the conclusion that the

4    parties intended to vest lifetime benefits for retirees." *Id.* at 937 (internal

5    quotation marks omitted). The parties are therefore free to include "explicit

6    terms that certain benefits continue after the agreement's expiration" without

7    violating this principle. *Id.* (internal quotation marks omitted); *see also CNH*

8    *Indus. N.V. v. Reese*, 138 S. Ct. 761, 766 (2018) ("If the parties meant to vest health

9    care benefits for life, they easily could . . . sa[y] so in the text.").

10        Applying this basic framework, we first consider whether the EBA

11    contains language vesting retiree medical benefits. *E.g.*, *Abbruscato v. Empire Blue*

12    *Cross & Blue Shield*, 274 F.3d 90, 97-98 (2d Cir. 2001). If so, we consider whether

13    other contractual provisions—such as a reservation of rights clause—defeat

14    vesting. *E.g.*, *id.*

15    **B.**    **Lifetime Language**

16        For the retirees to be entitled to summary judgment on their claim that

17    their welfare benefits vested, they must identify specific written language that

18    promises lifetime benefits. *See Int'l Multifoods*, 116 F.3d at 980 ("[I]f a document

1    unambiguously indicates whether retiree medical benefits are vested, the

2    unambiguous language should be enforced."); *cf. Devlin v. Empire Blue Cross &*

3    *Blue Shield*, 274 F.3d 76, 84 (2d Cir. 2001) (requiring plaintiffs to "first identify

4    specific written language that is reasonably susceptible to interpretation as a

5    promise" in order to oppose a motion for summary judgment (internal quotation

6    marks omitted)). The written language must tie the benefits that a recipient will

7    receive to that recipient's lifetime or to an indefinite duration. For example,

8    contractual language stating that retirees' life insurance benefits will remain at a

9    stated level "for the remainder of their lives" can reasonably be interpreted to

10   "creat[e] a promise to vest lifetime life insurance benefits." *Devlin*, 274 F.3d at 85

11   (emphasis omitted) (internal quotation marks omitted).[6] Such language

12   constitutes affirmative lifetime language because it measures the duration of a

13   retiree's benefits by the retiree's lifetime. *Id.*; *see also Diehl v. Twin Disc, Inc.*, 102

14   F.3d 301, 306 (7th Cir. 1996) (finding provision that retired employees would

---

[6] The *Devlin* Court also concluded that language stating "that 'retired employees, after completion of twenty years of full-time permanent service and at least age 55 *will be insured*'" could reasonably be interpreted as affirmative lifetime language based on unilateral contract principles. *Devlin*, 274 F.3d at 84.

14

receive benefits "for the lifetime of the pensioner" constituted "explicit and

seemingly unambiguous" lifetime language).

We have little trouble concluding that the language in the EBA constitutes

affirmative lifetime language. The EBA declares that "[a]ll past and future retired

employees and surviving spouses shall continue to receive . . . full medical

coverage . . . as now in effect or as hereafter modified by the parties *for the life of*

*the retiree or surviving spouse.*" App'x at 345, 375 (emphasis added). The plain

text of the EBA therefore manifests the parties' intent to secure medical coverage

for qualifying retirees' lifetimes.

**C.     Effect of Durational Language on Benefit Vesting**

Because we conclude that the EBA contains language vesting retiree

medical benefits, we must now consider whether the durational clauses of the

agreements between Honeywell and the UAW prevent the above-quoted

language from vesting retiree medical benefits. We first address Honeywell's

argument that the Supplemental Agreement contains a cancellation clause that is

the functional equivalent of a reservation of rights clause and then consider the

effect of the EBA's and CBA's general durational clauses.

1          **1.       The "Cancellation" Clause in the Supplemental Agreement**

2          Honeywell argues that the Supplemental Agreement contains a provision

3  under which Honeywell can cancel medical benefits, and therefore retiree

4  medical benefits in the EBA cannot vest. Specifically, Honeywell points to a

5  clause in the Supplemental Agreement that states: "If the Collective Bargaining

6  Agreement is canceled in whole or in part benefits hereunder will immediately

7  cease." App'x at 329, 339 (alterations omitted). According to Honeywell, this

8  provision of the Supplemental Agreement is a benefit-specific cancellation clause

9  that prevents the retirees' medical benefits from vesting and is the functional

10 equivalent of a reservation of rights clause. We do not agree that the clause

11 permits Honeywell to cancel retiree medical benefits for three reasons.

12         First, the EBA expressly prohibits Honeywell from unilaterally cancelling

13 retiree medical benefits, as Honeywell now claims the Supplemental Agreement

14 allows. The EBA promises retirees lifetime medical coverage "as provided in the

15 Pension Plan and Group Insurance Agreement, as now in effect *or as hereafter*

16 *modified by the parties*." App'x at 345, 375 (emphasis added). In order to modify

17 retiree benefits, both parties must agree. This provision thereby prohibits

18 Honeywell from unilaterally cancelling retiree medical benefits. We therefore

16

1  decline to read the "cancellation" clause as explicitly limiting the duration of

2  benefits.

3     Second, the Supplemental Agreement does not clearly reserve Honeywell's

4  rights to amend retirees' medical benefits because the "cancellation" clause

5  primarily functions to tie the Supplemental Agreement to the CBA. This

6  interpretation of the "cancellation" clause is unavoidable when one considers the

7  relationship between the CBA and the Supplemental Agreement. The CBA states,

8  "The details and levels of the Group Insurance benefits . . . specified are more

9  fully described and incorporated in the Supplemental Agreement covering

10  Insurance." App'x at 306, 316. This clause signals that the Supplemental

11  Agreement cannot function as a standalone agreement—that is, without the

12  CBA. The cancellation clause in the Supplemental Agreement, then, merely

13  articulates that if the CBA were cancelled, the Supplemental Agreement would

14  not continue; it does not provide an alternative means to terminate benefits.

15     In addition, the Supplemental Agreement's "cancellation" clause bears

16  little resemblance to cancellation language that this Court has previously found

17  reserves a company's right to amend benefits. Those clauses are explicit in

18  stating the employer's right to cancel or amend benefits. For example, in

1    *Abbruscato v. Empire Blue Cross & Blue Shield*, this Court considered a summary

2    plan description stating, "The company expects and intends to continue the

3    Plans in your Benefits Program indefinitely, but reserves its right to end each of

4    the Plans, if necessary. The company also reserves its right to amend each of the

5    Plans at any time." 274 F.3d at 98 (internal quotation marks omitted) (emphasis

6    omitted). We held that this language prevented benefits from vesting because the

7    language "clearly informed employees that . . . benefits were subject to

8    modification." *Id.* at 99. Similarly, in *International Multifoods Corp.*, we held that a

9    collective bargaining agreement stating, "During the term of this Agreement

10    there shall be no reduction in the schedule of benefits," precluded medical

11    benefits from vesting because it clearly suggested that *after* the term of the

12    agreement, the company could reduce benefits. 116 F.3d at 981 (emphasis

13    omitted) (internal quotation marks omitted). These clauses unmistakably

14    manifested the parties' intent to allow the employer to unilaterally modify

15    benefits and communicated that possibility to plan participants.

16          In contrast, the clause Honeywell relies on to defeat the EBA's lifetime

17    language merely identifies a scenario in which the Supplemental Agreement will

18    no longer be effective—it does not permit Honeywell to unilaterally amend the

1  retirees' benefits. The clause is best understood as a recognition that the

2  Supplemental Agreement was not an independent source of obligations, and we

3  will not construe that clause to defeat the parties' clear intent to vest retiree

4  medical benefits.

5        Third and finally, we note that, despite Honeywell's attempt to present

6  out-of-circuit authority to support its interpretation, no court of appeals has

7  considered a conditional clause like that in the Supplemental Agreement to be a

8  cancellation clause. In the cases on which Honeywell relies, the courts

9  determined that the contracts at issue did not contain any affirmative lifetime

10 language, and the courts therefore relied on general durational provisions to set

11 the lifespan of welfare benefits. *See Barton v. Constellium Rolled Prods.-Ravenswood,*

12 *LLC*, 856 F.3d 348, 352-53 (4th Cir. 2017) (declining to find lifetime language

13 where contract "state[d] that the retiree health benefits 'shall remain in effect for

14 the term of this . . . Labor Agreement'"); *Cole v. Meritor, Inc.*, 855 F.3d 695, 700

15 (6th Cir. 2017) (finding "'shall be continued' language . . . not sufficient to vest

16 the retirees with healthcare benefits for life"). Because these cases concern the

17 application of durational clauses in contracts without affirmative lifetime

language, they do not shed light on the interaction of affirmative lifetime

language and provisions that could be construed to temporally limit benefits.

The EBA prohibits unilateral modification of retiree benefits and the

"cancellation" clause in the Supplemental Agreement is not a reservation of

Honeywell's right to terminate or amend those benefits. We thus conclude that

the disputed clause in the Supplemental Agreement does not prevent retiree

benefits from vesting.

### 2.      The EBA and CBA Durational Clauses

We also reject Honeywell's arguments that the general durational clauses

in the EBA and CBA prevent retiree medical benefits from vesting primarily for

two reasons. First, the Supreme Court has specifically noted that when an

agreement provides for lifetime benefits, the expiration of that agreement does

not prevent welfare benefits from vesting. Second, if any more reason were

necessary, reading the durational clauses in the EBA and CBA to prevent vesting

would violate ordinary contract principles by rendering the lifetime language in

the EBA superfluous.

The Supreme Court has concluded that, while "contractual obligations will

cease, in the ordinary course, upon termination of [a] bargaining agreement,"

there are exceptions to this general rule. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991). The Court explicitly reserved one such exception: "[r]ights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." *Id*. Decades later in *Tackett*, the Supreme Court reiterated that, although obligations typically cease when a contract terminates, "[t]hat principle does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees." *Tackett*, 135 S. Ct. at 937. Indeed, in considering the effect of durational clauses on welfare benefits, the Supreme Court has instructed that, "when an agreement does *not* specify a duration for health care benefits in particular," courts "simply apply the general durational clause." *Reese*, 138 S. Ct. at 766 (emphasis added). The necessary implication is that where an agreement *does* specify a duration—e.g., a retiree's lifetime—for a particular benefit, that durational language applies to that benefit despite a general durational clause.

The EBA contains affirmative language stating that retiree medical benefits will continue "for the life of the retiree or surviving spouse." App'x at 345, 375. The contract provides a specific duration for retiree medical benefits that, for retirees who survived the agreement's expiration, exceeded the duration of the

agreement. As such, the durational clause did not prevent medical benefits from

vesting, and Honeywell has an obligation to provide medical coverage to the

union retirees for their lifetimes.

This interpretation is the only plausible interpretation that "gives a

reasonable, lawful, and effective meaning to all the terms." *Restatement (Second) of*

*Contracts* § 203. Under this well-settled principle, "[w]e must avoid an

interpretation of an agreement that renders one of its provisions superfluous."

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,*

*AFL-CIO*, 970 F.2d 1132, 1136 (2d Cir. 1992). We therefore will adopt a reasonable

interpretation of a contract that gives independent meaning to each term.

Honeywell's suggestion that the phrase "for the life of the retiree or

surviving spouse," App'x at 345, 375, actually means "for the life of the retiree or

surviving spouse while the EBA, CBA, and Supplemental Agreement are

effective" would render the lifetime language surplusage. By way of example, if

we were to delete "for the life of the retiree or surviving spouse" from the

disputed provision, it would then read, "All past and future retired employees

and surviving spouses shall continue to receive . . . full medical coverage as

provided in the . . . Group Insurance Agreement, as now in effect or as hereafter

modified by the parties." *See* App'x 345, 375. In such a scenario, the agreement's

durational clause would fill in how long the retired employees would "continue

to receive" medical coverage, *see* App'x 345, 375—that is, for the duration of the

EBA, so long, of course, as they remained alive during that time. If Honeywell's

interpretation of the contract were correct, then the language "for the life of the

retiree or surviving spouse" would add no meaning to the clause. Such an

interpretation runs afoul of traditional contract principles, and we instead

interpret the language "for the life of the retiree or surviving spouse" to assign a

specific duration to retirees' medical coverage that extends beyond the duration

of the contracts.

    We therefore conclude that the EBA contains unambiguous language

promising eligible retirees lifetime medical coverage. Because the EBA contains

plain, affirmative language tying benefits to the lifetime of the recipient, the

contracts' general durational clauses do not prevent those benefits from vesting.

Accordingly, the district court properly granted summary judgment to the Pre-

Expiration Plaintiffs and permanently enjoined Honeywell from terminating the

Pre-Expiration Plaintiffs' medical benefits.

III.    **The Post-Expiration Plaintiffs Are Entitled to a Preliminary Injunction**

We must next consider whether the EBA also entitles the Post-Expiration Plaintiffs to lifetime medical benefits. This question requires us to determine whether the term "[a]ll . . . *future retired employees* and surviving spouses," App'x at 345, 375 (emphasis added), refers to (1) employees who retired while the EBA was in effect or (2) employees who retired at any point, including after the EBA was no longer in effect. In support of the first interpretation, Honeywell argues that once the EBA was terminated, the agreement could not engender new obligations to new retirees. The Post-Expiration Plaintiffs argue that under basic principles of contract interpretation, the term "future" unambiguously refers to all eligible employees who subsequently retired from the plant, so long as they were employed at the time the EBA was in effect. The Post-Expiration Plaintiffs also present extrinsic evidence supporting their interpretation of the term.

For a preliminary injunction to issue, the movant must establish "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence

24

1  of the injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116

2  (2d Cir. 2009) (citation omitted) (internal quotation marks omitted). The parties

3  do not dispute that the balance of hardships tips decidedly in the Post-Expiration

4  Plaintiffs' favor. Nor do they dispute that "the threatened termination of benefits

5  such as medical coverage . . . obviously raise[s] the spectre of irreparable injury,"

6  *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979). We concur that the balance of

7  hardships tips in favor of the Post-Expiration Plaintiffs and that the Post-

8  Expiration Plaintiffs would face irreparable harm absent a preliminary

9  injunction; therefore, we consider below only whether these Plaintiffs have

10  presented a sufficiently serious question going to the merits.

11  **A.      The Meaning of the Term "Future Retired Employees"**

12        We start from the premise that absent language suggesting otherwise, the

13  EBA should not be interpreted to generate new obligations after its expiration.

14  *Tackett*, 135 S. Ct. at 937. Pursuant to this principle, Honeywell's interpretation of

15  the term "future retired employees," App'x at 345, 375, to refer to retirees who

16  retired after the EBA came into effect but before the EBA expired is plausible.

17        However, the EBA's unqualified use of the term "future" prevents the

18  straightforward application of this principle. As the Supreme Court has noted,

25

1  "constraints upon the employer after the expiration date of a collective-

2  bargaining agreement . . . may arise . . . from the express or implied terms of the

3  expired agreement itself." *Litton Fin. Printing Div.*, 501 U.S. at 203; *see also Tackett*,

4  135 S. Ct. at 938 (Ginsburg, *J.*, concurring). Thus, the parties can contract around

5  the general principle that a contract's obligations end when the contract expires,

6  and the use of the term "future retired employees" could reasonably reflect the

7  parties' intent to do so here. App'x at 345, 375.

8      Interpreting the term "future" as calling for an indefinite duration that

9  exceeds the duration of the EBA is particularly plausible in light of the

10  anticipatory purpose of the EBA. As the EBA explicitly states, the parties entered

11  into this agreement to resolve "the financial and economic impact and effects of a

12  *potential* sale of assets." App'x at 344, 374 (emphasis added). Thus, the drafting

13  parties were keenly aware of the EBA's forward-looking nature, and they drafted

14  the EBA to offset future loss of employment and benefits. Viewing the agreement

15  in context and given the lack of qualifying language, we find it plausible that the

16  parties used the term "future" to refer to *all* future retirees who were at least

17  employed, if not retired, while the EBA was in effect. As such, the Post-

26

1    Expiration Plaintiffs have presented a second plausible interpretation of the

2    contract provision.

3         Because both parties have proffered conflicting, reasonable interpretations

4    of the term "future retired employees," App'x at 345, 375, we conclude that the

5    EBA is ambiguous as to the Post-Expiration Plaintiffs. *See Collins v. Harrison-Bode*,

6    303 F.3d 429, 433 (2d Cir. 2002) ("Contract language is ambiguous if it is capable

7    of more than one meaning when viewed objectively by a reasonably intelligent

8    person who has examined the context of the entire integrated agreement."

9    (internal quotation marks omitted)). We therefore turn to the parties' proffered

10   extrinsic evidence to determine whether the evidence can definitively resolve the

11   ambiguity. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7

12   F.3d 1091, 1095 (2d Cir. 1993) ("[I]f ambiguity exists, then extrinsic evidence of

13   the parties' intent may be looked to as an aid to construing the contractual

14   language.").

15   **B.    The Extrinsic Evidence**

16        The extrinsic evidence does not provide a clear indication of the parties'

17   intent because it also supports conflicting interpretations. The evidence

18   simultaneously (and unexpectedly) suggests that *Honeywell* interpreted the EBA

1   to provide medical coverage for employees who retired after the EBA expired

2   and that the *Union* interpreted the EBA to provide medical coverage for only

3   employees who retired while the EBA was in effect. The conflicting evidence

4   cannot be harmonized without further fact development.

5        There is compelling extrinsic evidence that, from 1997 to 2015, Honeywell

6   interpreted the EBA to require it to provide medical coverage for retirees who

7   retired after the EBA expired. First and foremost, until 2015, Honeywell provided

8   medical coverage without interruption for Stratford plant retirees who retired

9   after the EBA expired. Second, Honeywell's correspondence with named plaintiff

10  David Kelly—who retired from the Stratford plant in 1998, after the EBA

11  expired—is illustrative of Honeywell's previous interpretation of the EBA. On

12  June 9, 1998, Honeywell's predecessor sent a letter to Kelly stating that "he and

13  his spouse [we]re eligible for lifetime retiree medical coverage." App'x at 127.

14  When, several years later, Honeywell sent another letter to UAW retirees,

15  including Kelly, that claimed to reserve the company's rights to amend retiree

16  medical benefits, Kelly objected that Honeywell had not reserved its right to

17  amend his medical benefits. Honeywell subsequently sent a correction letter to

18  UAW retirees, informing them that Honeywell had not "reserve[d] the right to

1    modify, change, or terminate . . . medical benefits negotiated by a collective

2    bargaining unit." App'x at 150 (emphasis omitted). This is powerful evidence

3    that Honeywell understood the EBA to confer lifetime medical benefits to

4    retirees who retired after the EBA expired.

5        However, the extrinsic evidence in the record also contains documentary

6    evidence that conflicts with Honeywell's performance and statements to retirees.

7    The district court considered a summary that the former Union president

8    (coincidentally, Kelly) drafted to convey details of the EBA to UAW members.

9    That summary stated, "The following benefits will be provided to all Local 1010

10   employees and retirees who are laid-off or retire *during this agreement*." Local

11   1010 UAW Decision & Effects Agreement Summary at 1, *Kelly v. Honeywell Int'l,*

12   *Inc.*, No. 3:16-cv-543-VLB (D. Conn. July 8, 2016) (emphasis added). This

13   contemporaneous summary suggests that the UAW previously understood that

14   the EBA did not vest lifetime benefits for retirees who retired after the agreement

15   terminated.

16       The union summary contradicts Honeywell's past performance, and,

17   because it is not the province of this court to weigh competing evidence, *see*

18   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), at this juncture we cannot

29

1   resolve which evidence supports the correct interpretation. We therefore

2   conclude that the extrinsic evidence does not clearly resolve the parties' intent as

3   to the meaning of the term "future retired employees," App'x at 345, 375. Despite

4   this ambiguity, the Post-Expiration Plaintiffs have raised "sufficiently serious

5   questions going to the merits to make them a fair ground for litigation." *Faiveley*

6   *Transp.*, 559 F.3d at 116 (internal quotation marks omitted). The equities tip

7   decidedly in the Post-Expiration Plaintiffs' favor, and the Post-Expiration

8   Plaintiffs would be irreparably harmed absent a preliminary injunction, *see*

9   *Whelan*, 602 F.2d at 1062. We therefore affirm the order of the district court

10   preliminarily enjoining Honeywell from terminating the Post-Expiration

11   Plaintiffs' medical benefits.

## CONCLUSION

13   The EBA unambiguously vested medical coverage for retirees who retired

14   prior to the expiration of the EBA. We AFFIRM the district court's judgment in

15   favor of union retirees who retired prior to the expiration of the EBA and their

16   surviving spouses and its order permanently enjoining Honeywell from

17   terminating medical coverage for those union retirees and their surviving

18   spouses. The EBA is ambiguous as to whether medical coverage for union

1   retirees who retired after the EBA expired and their surviving spouses vested.

2   Nonetheless, the Post-Expiration Plaintiffs have presented a sufficiently serious

3   question as to the merits and satisfied the remaining requirements for a

4   preliminary injunction to issue. We therefore AFFIRM the district court's order

5   preliminarily enjoining Honeywell from terminating the Post-Expiration

6   Plaintiffs' medical benefits and REMAND for further proceedings consistent

7   with this opinion.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

31