UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID KELLY, RICHARD NORKO, ANNETTE DOBBS and PETER DELLOLIO, for themselves and others similarly-situated,     : : : : : | |
|              Plaintiffs, : : | Civil Action No. 3:16-cv-543 (JAM) |
|       v.             : : | |
| HONEYWELL INTERNATIONAL INC.,     : : | |
|             Defendant.    : | |

**CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiffs David Kelly, Richard Norko, Annette Dobbs, and Peter Dellolio, on behalf of all Subclass B Members, and Defendant Honeywell International Inc. enter into this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.[1]

**1      Definitions**

1.1      *Class Counsel* means William Wertheimer and Thomas Meiklejohn.

1.2      *Class Representatives* means named plaintiffs David Kelly, Richard Norko, Annette Dobbs and Peter Dellolio.

1.3      *Class Members* means all the individuals in the class defined in the stipulation filed with the Court on August 12, 2016 (Dkt. 37), which was approved by the Court via the Order dated November 7, 2016 (Dkt. 51), including the Class Representatives.

1.4      *Complaint* means the Class Action Complaint filed in this Litigation (Dkt. 1).

1.5      *Court* means the United States District Court for the District of Connecticut.

---

[1] These and other capitalized terms have the meaning given to them in the definitions section below.

1.6     *Effective Date* means (i) the date 31 calendar days after the Judgment is entered, provided there is no pending appeal and no motion has been filed to extend the time to appeal; or (ii) if there is a pending appeal or motion to extend, the date the judgment becomes Final.

1.7     *EBAs* mean the collectively-bargained Effects Bargaining Agreements between Textron Lycoming Turbine Engine Division and UAW Locals 1010 and 376 signed in July 1994.

1.8     *Final* means with respect to any judicial ruling, order, or judgment that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any Settling Party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand.

1.9     *Honeywell* means Defendant Honeywell International Inc.

1.10    *Honeywell's Counsel* means Morgan, Lewis & Bockius LLP.

1.11    *Judgment* means the final judgment of the Court approving the Settlement Agreement and dismissing the Litigation with prejudice, substantially in the form of Exhibit A.

1.12    *Litigation* means *Kelly, et al. v. Honeywell Int'l Inc.*, Case No. 3:16-cv-543, pending in this Court.

1.13    *Parties* means Honeywell and the Class Representatives.

1.14    *Released Parties* means (a) Honeywell, (b) its past, present, and future parent corporation(s), (c) its past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, (d) its employee benefit plans, and (e) its past, present, and future members of their respective boards of trustees, agents, officers,

employees, independent contractors, representatives, attorneys, administrators, fiduciaries, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, administrators, associates, employee benefit plans, employee benefit plan fiduciaries, employee benefit plan administrators, and all persons acting under, by, through, or in concert with any of them.

1.15    *Stratford Plant* means the closed Stratford Army Engine Plant (SAEP) in Stratford, Connecticut whose business Honeywell's predecessor, AlliedSignal Inc., purchased from Textron in 1994.

1.16    *Settlement Agreement* means the agreement embodied in this agreement and its exhibits.

1.17    *Subclass A* means all Class Members who retired on or before June 6, 1997, the date the EBAs expired.

1.18    *Subclass B* means all Class Members who retired after June 6, 1997.

1.19    *Subclass B Member* means a member of Subclass B who was living on December 28, 2015. A list of Subclass B Members is attached as Exhibit B.

1.20    *UAW* means the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

## 2    Description of the Litigation and Related Facts

2.1    On April 6, 2016, the Class Representatives brought the Litigation against Honeywell in the United States District Court for the District of Connecticut, Case No. 16-cv-543, alleging their right to vested retiree "full medical coverage." They alleged that Honeywell was the successor to AlliedSignal Inc., which had assumed the EBAs that included a provision stating that:

> All past and future retired employees and surviving spouses shall continue to receive their full monthly pension, including supplements if any, and **full medical coverage** as provided in the Pension Plan and Group Insurance Agreement [the Supplemental Insurance Agreement dated May 30, 1994] as now in effect or as hereafter modified by the parties for the life of the retiree or surviving spouse.

They further alleged that Honeywell's December 28, 2015 announcement that it would terminate retiree medical coverage effective December 31, 2016 constituted an anticipatory breach of the EBAs. Honeywell moved to dismiss the action, which the Court denied. Honeywell also postponed the medical coverage termination date to March 1, 2017.

2.2    On November 7, 2016, the Court certified a class of former Stratford Plant production and maintenance and office and clerical employees represented by UAW Locals 376 and 1010 who retired from Honeywell or its predecessor after October 28, 1994 and their surviving spouses who are receiving retirement health insurance benefits from Honeywell or are otherwise eligible to receive coverage.

2.3    On February 8, 2017, the Court granted summary judgment in Plaintiffs' favor with respect to Subclass A, finding that the EBA term "for the life of" vested their right to "full medical coverage as provided in the Group Insurance Agreement." *Kelly v. Honeywell,* 233 F. Supp. 3d 302, 312-316 (D. Conn. 2017).

2.4    On February 27, 2017, the Court conducted an evidentiary hearing on whether Subclass B Members were eligible for vested benefits.

2.5    On February 28, 2017, the Court granted summary judgment in Honeywell's favor as to Subclass B.

2.6    In response to the Court's February 28, 2017 order, effective March 1, 2017, Honeywell terminated the medical coverage of Subclass B Members.

2.7     On May 25, 2017, the Court reconsidered its decision granting Honeywell summary judgment as to Subclass B Members, finding that there was a triable issue as to whether they were eligible for vested benefits.

2.8     On June 27, 2017, the Court ordered Honeywell to reinstate the Subclass B Members' medical coverage pending trial.

2.9     Effective August 1, 2017, Subclass B Members' healthcare coverage was reinstated.

2.10    Honeywell appealed. On August 7, 2019, the Second Circuit Court of Appeals affirmed the Court's judgment in favor of Subclass A and affirmed the Court's order permanently enjoining Honeywell from terminating their medical coverage. It also affirmed the Court's order preliminarily enjoining Honeywell from terminating Subclass B Members' medical benefits and remanded for further proceedings. *Kelly v. Honeywell,* 933 F.3d 173 (2d Cir. 2019).

2.11    The further proceedings would be (a) a trial regarding whether Honeywell is obligated to provide lifetime medical benefits to Subclass B Members and, if so, whether Subclass B Members are entitled to damages for the period from March through July 2017 when Honeywell was not providing Subclass B members with medical coverage; and (b) Class Counsel's claim for ERISA attorneys' fees and costs.

2.12    On September 4, 2019, the Court referred this action for a settlement conference.

2.13    On December 4, 2019, United States Magistrate Judge Robert Spector conducted a settlement conference, and the Parties reached the settlement memorialized herein.

**3   Discovery Summary**

The Parties have completed discovery, including, among other things, taking numerous depositions, an extensive exchange and review of documents, and written discovery requests and responses.

## 4    Benefits of Settlement

To avoid the uncertainty, delay and expense of continuing to litigate Subclass B liability and individual damages claims, and to resolve Class Counsel's ERISA attorneys' fee and costs claim, the Parties desire to reach a settlement.

## 5    No Admissions

5.1    This agreement is the result of a compromise and shall not constitute an admission of fault by any of the Parties, nor does it constitute evidence of any fault on the part of any Party.

5.2    Honeywell denies each and every allegation of wrongdoing asserted with respect to Subclass B and contends it has no liability to Subclass B Members. Honeywell specifically denies that it breached the terms of any collective bargaining agreement, any LMRA provisions, or any ERISA provisions in connection with the termination or threatened termination of medical benefits provided to Subclass B Members.

5.3    This Settlement Agreement and the consideration provided in connection with it are made in compromise of disputed claims solely for the purpose of avoiding continued litigation costs and are not admissions of liability of any kind, whether legal or factual. Neither the facts nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except (i) in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Approval Order, or (ii) in an action or proceeding where the release of the Released Claims may

serve as a bar to recovery, or (iii) in the event that Honeywell needs to establish that this Litigation has settled and/or the terms of this Settlement Agreement.

## 6    Order and Notice of Preliminary Approval

6.1    On or before January 17, 2020, the Class Representatives will file an Unopposed Motion for Preliminary Approval with the Court seeking entry of the Preliminary Approval Order. The motion and order will be substantially in the form of Exhibits C and D. The Preliminary Approval Order shall:

6.1.1    Preliminarily approve the settlement as provided in the Settlement Agreement;

6.1.2    Approve of the text of the Notice of Settlement to Subclass B Members ("Notice") and a cover letter from Class Counsel, which are attached as Exhibits E and F;

6.1.3    Determine that under Federal Rule of Civil Procedure 23, the Notice constitutes the best notice practicable under the circumstances, provides due and sufficient notice of the Fairness Hearing and of the rights of all Subclass B Members, and complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law;

6.1.4    Schedule a hearing at least ninety (90) calendar days from the mailing of the Notice, for the Court to consider whether the terms of this Settlement are fair, reasonable, and adequate and thus should be finally approved and implemented by the Court pursuant to Federal Rule of Civil Procedure 23(e) (the "Final Fairness Hearing");

6.1.5    Provide that any Subclass B Member may appear personally or by counsel at the Final Fairness Hearing and may object or express the member's view regarding the Settlement Agreement and present evidence, briefs, or other papers in support. However, a

7

Subclass B Member will not be entitled to contest the Court's approval of the Settlement Agreement unless no later than 30 days before the scheduled Final Fairness Hearing such Subclass B Member files with the clerk of the Court written objections and all papers to be submitted to the Court at the Final Fairness Hearing and, on or before that date, serves such objections and papers on Class Counsel and Honeywell's Counsel.

6.2     Class Representatives will separately move for ERISA attorneys' fees and expenses in the amount provided for in this Settlement Agreement.

6.3     Within 30 calendar days following entry of the Preliminary Approval Order, Class Counsel will send via first-class mail copies of the Notice, the Settlement Agreement, and the motion for attorneys' fees to Subclass B Members with a cover letter summarizing the proposed settlement.  The Notice and cover letter will be substantially in the form of Exhibits E and F. Subsequently, Class Counsel shall submit a proof of mailing to the Court.

## 7     Compliance with Class Action Fairness Act

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Honeywell will provide notice of this proposed settlement to the appropriate governmental entities.

## 8     Judgment to be Entered Approving the Settlement

If the Court preliminarily approves the settlement, Class Representatives shall timely move the Court to enter a Final Judgment and Order of Dismissal ("Judgment") following the Final Fairness Hearing, in which Class Representatives will ask the Court to:

a.     Approve the settlement, adjudge its terms to be fair, reasonable, adequate, and in the best interests of Subclass B, and direct consummation of this settlement in accordance with the terms and conditions of the Settlement Agreement;

b. Determine that the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Notice to Subclass B Members;

c. Determine that all applicable CAFA requirements have been satisfied;

d. Determine that Class Representatives and all Subclass B Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be (i) conclusively deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from all Released Claims, and (ii) barred and enjoined from suing the Released Parties in any action or proceeding alleging any of the Released Claims, even if any Class Representative or Subclass B Member may thereafter discover facts in addition to or different from those which the Class Representative, Subclass B Member, or Class Counsel now know or believe to be true with respect to the Litigation and the Released Claims, whether or not such Subclass B Members have filed an objection to the Settlement or to any application by Class Counsel for an award of attorneys' fees and costs, and whether or not the objections or claims for distribution of such Subclass B Members have been approved or allowed;

e. Provide that upon its entry, all Parties and all Subclass B Members shall be bound by the Settlement Agreement and by the Judgment; and

f. Dismiss the Litigation with prejudice as to Honeywell and extinguish, discharge and release any and all Released Claims against any and all Released Parties, and without costs except as provided herein.

**9    Releases and Related Matters**

9.1     Upon the Effective Date, Class Representatives, all Subclass B members, and the UAW will fully release the Released Parties from any and all Released Claims as defined below in Paragraph 9.2.

9.2     The "Released Claims" shall be any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, losses, attorneys' fees, expenses, costs, and causes of action, whether arising under federal, state or local law, whether by statute, contract or equity, whether brought in an individual or representative capacity, whether known or unknown, suspected or unsuspected, foreseen or unforeseen for actions:

a.     That were asserted in the Litigation or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint; or

b.     That arise out of, relate in any way to, are based on, or have any connection with the retiree medical benefits that Honeywell provides to Subclass B Members, including but not limited to claims that Honeywell violated collectively bargained agreements, an employee benefit plan, any other agreement, the Labor Management Relations Act ("LMRA"), the Employee Retirement Income Security Act ("ERISA"), or any other federal, state or local statutes, common law, or regulations that may apply to such retirement medical claims in connection with the medical benefits that Honeywell has provided or continues to provide to Subclass B Members, excluding routine claims for individual denial of benefits that do not relate to any issues in the Litigation; or

c.     That would be barred by res judicata based on entry of the Judgment; and

d.     That relate to the calculation of the damages set forth in Section 12.

9.3     The Parties stipulate and agree that, upon the Effective Date, Class Representatives and all Subclass B Members expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by: (i) California Civil Code § 1542, which provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor," or (ii) any similar state, federal, or other law, rule or regulation or principle of common law of any domestic or foreign governmental entity. Class Representatives and Subclass B Members may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims with respect to any Released Parties, but Class Representatives and all Subclass B Members hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, without regard to the subsequent discovery or existence of such other or different facts.

9.4     The Judgment will forever bar Class Representatives, all Subclass B Members and the UAW from instituting or prosecuting, either directly or indirectly, any such claims or causes of action against the Released Parties. The Parties intend the settlement to be a final and complete resolution of all disputes asserted or that could have been asserted by Class Representatives, Subclass B Members, and the UAW with respect to the Released Claims.

9.5     The Parties do not waive any claim which may arise regarding enforcement of this Settlement Agreement or the Judgment incorporating it.

## 10   Medical Coverage for Life Consistent with Court Orders

Honeywell will continue to provide to all Subclass B Members for the remainder of their lives medical coverage consistent with the court orders applicable to Subclass A Members referenced above at Sections 2.3 and 2.10.

## 11  Payments for Damages

Within 14 calendar days after the Effective Date, Honeywell will remit checks made out to the Subclass B Members listed on Exhibit B who claim to have suffered losses as a result of being without medical coverage during a short period in 2017, in the amounts set opposite their names, which shall not exceed an amount totaling $103,934. The individual amounts have been calculated by Class Counsel, and Honeywell shall have no responsibility or liability relating to such calculations.

## 12  Attorneys' Fees and Costs

Within 14 calendar days after the Effective Date, Honeywell will remit payment for Class Counsel's attorneys' fees and costs in the amount of $658,566 to William Wertheimer and Livingston, Adler, Pulka, Meiklejohn & Kelly. Honeywell will bear its own attorneys' fees and costs related to the Litigation.

## 13  Right to Terminate the Settlement

13.1    Each Party has the option to withdraw unilaterally from and terminate the settlement in the event that: (i) either the Preliminary Approval Order or the Judgment is materially modified by the Court in a manner unacceptable to either Party; (ii) the settlement is not approved by the Court; or (iii) the settlement is disapproved or materially modified upon appeal.

13.2    In the event that the settlement is terminated pursuant to Section 13.1 of this Settlement Agreement, then:

a.      the settlement proposed herein shall be of no further force and effect;

b.      with the exception of Section 13.2, which shall survive the termination of the settlement, this Settlement Agreement and all negotiations, proceedings, and statements relating thereto, and any amendment thereof, shall be null and void and shall be without prejudice to any Party hereto, and each Party shall be restored to his, her, or its respective position as it existed prior to the execution of the Settlement Agreement.

## 14   Miscellaneous Provisions

14.1    This Settlement Agreement constitutes the entire agreement of the Parties and may not be amended, modified, or any of the provisions waived except by a written instrument signed by the Class Representatives, Class Counsel, Honeywell and Honeywell's Counsel. Any such amendment that would materially affect the level of medical insurance benefits will be effective only if approved by the Court.

14.2    The Parties intend this Settlement Agreement to be a final and complete resolution of all remaining disputes between them relating to or arising out of the subject matter of the Litigation, or which otherwise constitute Released Claims. Accordingly, the Parties agree that the terms of this Settlement Agreement represent a good faith settlement of the Released Claims, reached voluntarily after consultation with experienced counsel.

14.3    This Settlement Agreement shall be governed by the laws of the State of Connecticut without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

14.4    Upon becoming operative, this Settlement Agreement will be binding upon and inure to the benefit of the Parties and the Released Parties and their respective successors,

assigns, heirs, estates, executors, and administrators and upon any corporation, partnership, or entity into or with which any such person or entity may merge or consolidate.

14.5    This Settlement Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall be deemed to constitute the same agreement. The Parties agree that facsimile, portable document format, and electronic signatures shall be treated as an original signature.

14.6    None of the Parties shall be considered the drafter of this agreement.

14.7    Upon execution hereof, the Parties shall work cooperatively to implement and consummate this Settlement Agreement. Should any controversy, claim, dispute, or difference arise between the Parties as to the interpretation and implementation of any term of this Settlement Agreement, an earnest effort shall be made to settle it promptly. If any such controversy, claim, dispute, or difference is not settled, the Court shall retain jurisdiction over the interpretation and implementation of the Settlement Agreement.

**Parties**:

s/David Kelly_____               Date:  __01/17/2020_
David Kelly

_s/Richard Norko_____               Date: _01/17/2020_
Richard Norko

_s/Annette Dobba_____               Date: 01/17/2020_____
Annette Dobbs

_s/Peter Dellolio_____               Date: 01/17/2020_
Peter Dellolio

_s/Kevin_Covert_____               Date: _01/16/2020_
Kevin Covert
Honeywell International Inc.